**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **I.A. RANA ENTERPRISES, INC.,** | ) | |
| **an Illinois corporation, IQTIDAR** | ) | |
| **RANA, an individual,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 07 C 1149** |
| | ) | |
| **v.** | ) | **Magistrate Judge Morton Denlow** |
| | ) | |
| **CITY OF AURORA, an Illinois** | ) | |
| **municipal corporation, TOM** | ) | |
| **WEISNER, an individual, ROBERT** | ) | |
| **O'CONNOR, an individual, MIKE** | ) | |
| **SAVILLE, an individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Iqtidar Rana and I. A. Rana Enterprises, Inc., ("Plaintiffs" or "Rana") filed

a First Amendment lawsuit under 42 U.S.C. § 1983 against Defendants City of Aurora

("City"), Mayor Thomas Weisner ("Mayor" or "Weisner"), and Aldermen Robert O'Connor

("O'Connor") and Mike Saville ("Saville") (collectively "Defendants"), alleging a violation

of their First Amendment rights. Specifically, Plaintiffs allege Defendants engaged in

viewpoint discrimination and retaliation. Defendants filed a motion for summary judgment

asserting Plaintiffs' two-count Amended Complaint is unsupported by evidence.

In Count I, Plaintiffs allege Defendants engaged in viewpoint discrimination by

restricting comments made by Plaintiffs' lawyer, Mark Daniel ("Daniel"), during two City

Council meetings in February, 2007. In Count II, Plaintiffs allege Defendants retaliated against them for the subsequent filing of this lawsuit by unnecessarily prolonging a construction project which limited public access to Plaintiffs' business. Defendants also filed a motion to strike and deem admitted portions of Plaintiffs' Rule 56.1 Response to Defendants' Statement of Facts In Support of Summary Judgment and Plaintiffs' Statement of Additional Material Facts. The Court held oral argument on June 10, 2009. For the following reasons, Defendants' motion to strike and deem admitted is granted in part and denied in part. Defendants' motion for summary judgment is granted.

## I. DEFENDANTS' MOTION TO STRIKE AND DEEM ADMITTED PORTIONS OF PLAINTIFFS' RULE 56.1 RESPONSE TO DEFENDANTS' STATEMENT OF FACTS IN SUPPORT OF SUMMARY JUDGMENT AND PLAINTIFFS' RULE 56.1 STATEMENT OF ADDITIONAL FACTS

Defendants move this Court to strike and deem admitted portions of Plaintiffs' Local Rule 56.1 Statement of Material Facts in Response to Defendants' motion for summary judgment and Plaintiffs' Local Rule 56.1 Statement of Additional Facts.[1]

---

[1] Citations to the record are in the following form: Plaintiffs' First Amended Complaint (Docket Entry 32) is cited as "Am. Comp. ¶__"; Defendants' Local Rule 56.1(a)(3) Statement of Material Facts is cited as "DSOF ¶__"; Plaintiffs' LR 56.1(b)(3) Response to Defendants' Statement of Material Facts is cited as "PR ¶__"; Plaintiffs' LR 56.1(b)(3)(C) Statement of Additional Facts is cited as "PSAF ¶__"; Defendants' LR 56.1(a) Reply to Plaintiffs' Response and Plaintiffs' Statement of Additional Facts is cited as "DR ¶__"; Plaintiffs' and Defendants' Appendix of Exhibits are cited as "Pl./Def. Ex. __"; Defendants' Memorandum of Law in Support of their Motion for Summary Judgment is cited as "Def. Br.__"; Plaintiffs' Response to Defendants' Motion for Summary Judgment is cited as "Pl. Resp.__"; Defendants' Reply Brief is cited as "Def. Rep.__."

## A.    Local Rule 56.1

The Northern District of Illinois promulgated Local Rules 56.1(a) and 56.1(b) to delineate the parties' obligations in summary judgment proceedings, and the Court has broad discretion to enforce these rules. *Kasak v. Village of Bedford Park*, 563 F. Supp. 2d 864, 867 (N.D. Ill. 2008) (citing *Malec v. Sanford,* 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("the Court of Appeals for the Seventh Circuit regularly upholds strict enforcement of Local Rule 56.1")).[2]  Rule 56.1(a)(3) requires the movant to submit a statement of undisputed material facts that entitle him to judgment as a matter of law. *Id.*; N.D. Ill. L.R. 56.1(a).  The nonmovant must respond to the movant's statement of facts, and may also submit a statement of additional facts. *Kasak,* 563 F. Supp. 2d at 867; N.D. Ill. L.R. 56.1(b).  The response must contain "a response to each numbered paragraph in the moving party's statement," mirroring the movant's statement in form and "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Kasak,* 563 F. Supp. 2d at 867 (quoting *Malec,* 191 F.R.D. at 584); N.D. Ill. L.R. 56.1(b). Thus, the nonmovant must cite evidentiary materials justifying any denial. *Kasak,* 563 F. Supp. 2d at 867. "If the cited material does not clearly create a genuine dispute over the movant's allegedly undisputed fact, the nonmovant should provide an explanation." *Id.* (quoting *Malec*, 191 F.R.D. at 584).  A nonmovant's response should also not contain purely

---

[2] This Court uses *Malec* as "a vehicle to inform lawyers appearing before this Court what precisely we expect from summary judgment practitioners." *Kasak,* 563 F. Supp. 2d at 867 n. 2 (quoting *Malec,* 191 F.R.D. at 582).

argumentative denials. *Kasak,* 563 F. Supp. 2d at 867. If a nonmovant fails to properly respond to a movant's 56.1(a)(3) statement, the movant's factual allegations are deemed admitted. *Id.*

The requirements for the nonmovant's statement of additional facts under Rule 56.1(b)(3)(C) are the same as that of the movant's statement of facts under Rule 56.1(a)(3). *Id.* The nonmovant's "statement of additional facts must set forth material facts that require the denial of summary judgment, supported by specific references to the record." *Id.* (quoting *Malec*, 191 F.R.D. at 584); N.D. Ill. L.R. 56.1(b)(3)(C). The statement must contain only factual allegations, supported by specific references to exact pieces of the record that support the factual contention contained in the paragraph. *Kasak,* 563 F. Supp. 2d at 867. Such references must "include page (or paragraph) numbers, as opposed to simply citing an entire deposition, affidavit, or other exhibit document." *Id.* (quoting *Malec*, 191 F.R.D. at 584 ("District Courts are not obliged . . . to scour the record looking for factual disputes;" "Factual allegations not properly supported by citation to the record are nullities.")). Moreover, any "documents submitted with a motion that are not referred to in the statement of facts will be ignored." *Id.* Any allegations supported by personal knowledge only must be supported by affidavit. *Kasak,* 563 F. Supp. 2d at 867. Additionally, the evidence supporting the allegations must represent admissible evidence. *Id.* (citing *Malec*, 191 F.R.D. at 585 ("a hearsay statement made during a deposition does not constitute adequate evidentiary support for a factual proposition")).

**B. Defendants' Motion to Strike Portions of Plaintiffs' Local Rule 56.1(b)(3)**

**Response to Defendants' Statement of Material Facts**

Defendants move this Court to strike portions of Plaintiffs' Local Rule 56.1(b)(3) Response to Defendants' Statement of Material Facts. Defendants challenge virtually every response in which Plaintiffs contest the facts asserted. Defendants argue Plaintiffs failed to conform to the requirements of Local Rule 56.1 by failing to properly cite to the record in support of their denials, and by including argumentative statements and additional facts within their responses. Failure to comply with Local Rule 56.1 may result in severe consequences:

> This rule may be the most important litigation rule outside the statutes of limitation because the consequences of failing to satisfy its requirements are so dire. Essentially, the penalty for failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant (at least if the movant has done his or her job correctly) because the movant's factual allegations are deemed admitted.

*Malec*, 191 F.R.D. at 584. Defendants move to strike Plaintiffs' responses to paragraphs 12, 14-16, 19, 20-22, 26, 27, 31, 44-49, and 52-54. For the following reasons, Defendants' motion to strike is granted in part and denied in part.

**1.      The Court Grants Defendants' Motion to Strike Plaintiffs' Responses to Paragraphs 12, 14, 19, 21-22, 26, 27, 31, 44, 46, 48, and 52-53.**

The Court grants Defendants' motion to strike Plaintiffs' responses to paragraphs 12, 14, 19, 21-22, 26, 27, 31, 44, 46, 48, and 52-53. In these paragraphs, Plaintiffs fail to comply with the requirements of Local Rule 56.1(b)(3). *Kasak*, 563 F. Supp. 2d at 867-68 (citing *Malec*, 191 F.R.D. at 583-85); N.D. Ill. L.R. 56.1(b). For example, in paragraph 12, Plaintiffs not only assert new factual allegations (the range of topics related to the proposed

redevelopment agreement), but also cite generally to a 59-page document without providing specific references to the portions relied upon. *Kasak*, 563 F. Supp. 2d at 868 (striking general references "improperly requiring the Court to scour those records to find support for Plaintiff's response"); PR ¶ 12; *see* Pl. Ex. A. Plaintiffs failed to adhere to the guidelines provided in *Kasak* by inserting new facts into multiple paragraphs. *See* PR ¶ 46 ("notice resulted from additional inquiries made"); PR ¶ 52 ("The North Avenue point of ingress and egress was closed for at least five, and sometimes six days per week."); *see also* PR ¶¶ 12, 19, 22, 27, 49, and 53. While Plaintiffs are entitled to submit new factual material in addition to their responses, "injecting such facts into [their] responses is inappropriate." *Kasak,* 563 F. Supp. 2d at 868.

Several paragraphs contain improper denials, with no citation to the record to support the denial, or statement that the information cited by the Defendants does not support the alleged facts. *Kasak*, 563 F. Supp. 2d at 868; *see* PR ¶ 14 ("Ald. O'Connor and Ald. Saville determined the rules . . ."); PR ¶ 21 ("Ald. O'Connor advised Daniel that he was beyond the relevant subject matter during the initial three minutes"); *see also* PR ¶¶ 22, 26, 27, 31, 44, 46, 48, and 53. As Rule 56.1(b) makes clear, such citations are required "in the case of any disagreement." *Kasak*, 563 F. Supp. 2d at 867 ("the nonmovant must cite evidentiary materials justifying any denial"); N.D. Ill. L.R. 56.1(b)(3). For these reasons, the Court grants Defendants' motion to strike the above responses, and deems them admitted.

**2.     The Court Grants in Part and Denies in Part Defendants' Motion to**

**Strike Plaintiffs' Responses to Paragraphs 15-16, 20, 45, 47, 49, and 54.**

Plaintiffs appear to properly deny portions of paragraphs 15-16, 20, 45, 47, 49, and 54 by providing appropriate citations to the record in support of their assertions. Paragraph 20, for example, provides specific references to sections of the proposed redevelopment agreement supporting the factual contention asserted within the paragraph. *See* PR ¶ 20. However, Plaintiffs improperly inject additional facts into these paragraphs. *See* PR ¶ 49 ("The gas station at the southeast corner . . . suffered a complete closure . . . for an aggregate of 75 days"). The Court strikes the portions of Plaintiffs' responses that include this additional factual material, but accepts the portions of the responses that state Plaintiffs' denials and the supporting evidence for those denials. *Kasak*, 563 F. Supp. 2d at 869. In their responses to paragraphs 47 and 49, Plaintiffs introduce argumentative and speculative statements which this Court strikes. PR ¶ 47 ("The loss was neither brief nor temporary"); PR ¶ 49 ("It may be that the other gas station experienced closure issues"). The Court accepts the remaining portions of paragraphs 47 and 49, as well as paragraphs 15-16, 20, 45, and 54, which are supported by proper citations to the record. Thus, the Court grants in part and denies in part Defendants' motion to strike the above responses.

**C.     Defendants' Motion to Strike Plaintiffs' Statement of Additional Facts**

Defendants also move this Court to strike portions of Plaintiffs' Statement of Additional Facts for failing to conform to the requirements of Rule 56.1(b)(3)(C). This portion of Rule 56.1(b) allows Plaintiffs to assert "any additional facts that require the denial of summary judgment." N.D. Ill. L.R. 56.1(b)(3)(C). Any such facts must "includ[e]

references to the affidavits, parts of the record, and other supporting materials relied on." *Id*. Defendants correctly assert that paragraphs 56-63 and 66 of Plaintiffs' Statement of Additional Facts either fail to cite to any evidence in support of the facts alleged, or cite to portions of the record which do not support or directly conflict with those facts. *See* PSAF ¶¶ 56-57, 59, 62-63, 66 (no citations provided); ¶¶ 58-61 (not supported by the record). In paragraphs 58 and 59, for example, Plaintiffs' assertion that another member of the public, Dr. Roberts, spoke for over three minutes while Mr. Daniel "was forced to attempt to confine his comments to a mere two minutes" is not supported by the record cited, which shows that Mr. Daniel spoke for longer than Dr. Roberts. *See* PSAF ¶¶ 58-59; DR ¶¶ 58-59; Def. Ex. 5, pp. 34-38; Def. Ex. 5, pp. 54-61; PR ¶ 19 ("Daniel spoke for longer than three minutes"). In paragraph 61, Plaintiffs allege that "[Defendant] O'Connor implied that Daniel would be removed from the meeting." PSAF ¶ 61. The portion of the record cited shows that Defendant O'Connor made no such implication, but rather discussed removal as an option that *would not be employed*. *See* Def. Ex. 5, 61:10-62:2 ("we can ask to remove them from the room but we are not going to do that").

Several of these paragraphs also contain argumentative statements rather than discrete factual contentions. PSAF ¶ 62 ("The transcript speaks for itself in that it is obvious that the time limit imposed upon Daniel made it impossible . . ."); ¶ 63 ("Daniel obviously intended to speak in a fashion adverse to the proposal"). As this Court explained in *Kasak*, Plaintiffs' Statement of Additional Facts "must contain only factual allegations, supported by specific references to exact pieces of the record that support the factual contention contained in the

paragraph." 563 F. Supp. 2d at 867.  Thus, the Court grants Defendants' motion to strike

paragraphs 56-63 and 66.  Due to the lack of support in the record, the additional facts

asserted by Plaintiffs in the above paragraphs would not change the Court's ruling on

Defendants' motion for summary judgment.

Plaintiffs do provide adequate citation for the additional facts put forth in paragraphs

64 and 67-69.  Defendants contend the facts alleged in paragraphs 64 and 67-68 are not

material to this case because they allege actions taken by the Defendants against non-parties

and actions taken by Defendants that are not challenged as First Amendment violations.  *See*

PSAF ¶¶ 64, 67-68; DR ¶¶ 64, 67-68. Plaintiffs, however, seek to admit such allegations to

create questions of material fact regarding the justification offered by Defendants for their

actions with regard to this litigation.  *See* Pl. Resp. 3-5.  For the purposes of this summary

judgment motion, the Court will allow these paragraphs as additional contextual support for

Plaintiffs' claims.  In paragraph 69, Plaintiffs provide adequate citation to the record in

support of their allegation.  PSAF ¶ 69.[3] For these reasons, Defendants' motion to strike

paragraphs 64 and 67-69 is denied.

## II.  BACKGROUND FACTS

As required when considering a motion for summary judgment, the following facts

are either uncontested or presented in the light most favorable to the Plaintiffs when

---

[3] Defendants correctly point out that Plaintiffs have misidentified Defendants' Exhibit 9,
referenced in paragraph 69 as the minutes to the February 20 meeting.  Exhibit 9 is an affidavit from Eric
Schoeny, an employee of the City.  The minutes from the February 20 meeting, referred to by Plaintiffs in
paragraph 69, are provided by Defendants as Exhibit 8.  The Court will assume that Plaintiffs are
referring here to Defendants' Exhibit 8 for the purposes of this motion.

contested. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

**A.** **Introduction**

Mr. Rana is the sole owner of Rana Enterprises, Inc. DSOF ¶ 6. At all times relevant to this litigation, Plaintiffs owned the real estate at the northwest corner of Broadway Avenue and North Avenue in Aurora, Illinois, where Plaintiffs operated the Hilltop Citgo service station. DSOF ¶ 7. Beginning in 2006, the City entered into a redevelopment agreement with a third party, Aurora Redevelopment Company, LLC. The agreement outlined plans for the extensive remediation of a steel manufacturing plant site, among others, and the construction of a mixed use redevelopment project. Plaintiffs' property was within or near the redevelopment site. Plaintiffs opposed the redevelopment project.

Plaintiffs' two-count Amended Complaint alleges violations of Plaintiffs' First Amendment rights by Defendants. Count I contends that Defendants denied Plaintiffs access to speak at a public forum. Count II alleges that the Defendants retaliated against Plaintiffs by intentionally extending and prolonging a reconstruction project along North Avenue.

**B.** **The Joint Council Meeting of February 15, 2007.**

On February 15, 2007, the City held a joint meeting of the Finance Committee and the Planning and Development Committee. DSOF ¶ 10. Defendants Aldermen O'Connor and Saville co-chaired the meeting. DSOF ¶ 13. The purpose of the joint meeting was to discuss the proposed redevelopment agreement. DSOF ¶ 12.

At this meeting, rules for public participation in accordance with City Ordinances were set forth without reference to the content of the messages. DSOF ¶¶ 14, 17; Def. Ex.

2, ¶¶ 13-21; Def. Ex. 3, ¶¶ 13-17; Def. Ex. 4; PR ¶ 17 ("Agreed"). As referenced in the City Municipal Code, public comments at the meeting were subject to a relevancy requirement and a three-minute time limit. Def. Ex. 4, § 2-102 (Right to Speak), § 2-103 (Disorderly Conduct). Members of the public audience were informed, prior to the meeting, of a three-minute rule for public comments. DSOF ¶ 15; PR ¶ 15. During the meeting, various parties were allowed to speak regarding provisions being considered as amendments to the proposed agreement. Def. Ex. 5, pp. 3-53.

Mark Daniel, Plaintiffs' attorney, spoke at the meeting on behalf of Plaintiffs. DSOF ¶ 18. Mr. Daniel was not aware of the three-minute rule for public comments. PR ¶ 15; Pl. Ex. B, ¶ 15. Before speaking, Alderman Saville instructed Mr. Daniel to keep his comments "very brief." Def. Ex. 5, p. 57. While Mr. Daniel was speaking, Alderman O'Connor admonished him for speaking on irrelevant topics. *Id*. at 60. When Mr. Daniel continued to discuss Plaintiffs' concerns regarding the effect of the proposed redevelopment agreement on the Hilltop Citgo, Alderman O'Connor stopped Mr. Daniel from speaking, again stating that Mr. Daniel's comments were not relevant to the agenda of the meeting, and asked him to address his concerns through more appropriate channels. DSOF ¶ 21; Def. Ex. 5, p. 60.

Thereafter, on February 20, Mr. Daniel sent an email requesting that he be recognized and allowed to speak at length during the next city meeting. Def. Ex. 6. The City replied by informing Plaintiffs that public comments would not be allowed at that meeting and requested that Mr. Daniel submit his client's grievances with the proposed agreement to the Council in writing, as "fresh [ideas] are always welcome." *Id*.

**C.      The City Committee of the Whole Meeting of February 20, 2007.**

On February 20, 2007, a City Committee of the Whole meeting was held. DSOF ¶ 23. Generally, Committee of the Whole meetings differ from other City Council meetings in that comments from the public are not allowed without permission. DSOF ¶ 27; Def. Ex. 4, § 2-122. Committee of the Whole meetings exist to allow Council members to discuss agenda items and to ask questions of parties to potential agreements with the City. DSOF ¶ 28. Defendant Mayor Weisner was chairman of the February 20 meeting. DSOF ¶ 30.

The agenda included the proposed redevelopment agreement between the City and Aurora Redevelopment Company. DSOF ¶ 25. During the meeting Council members questioned parties involved with the proposed agreement. PR ¶ 27. Mr. Daniel was in attendance and attempted to speak without being recognized by the Mayor. DSOF ¶ 31. The Mayor refused to recognize Mr. Daniel and told him to stop speaking. DSOF ¶ 32. On February 28, 2007, Plaintiffs filed this lawsuit against Defendants alleging violation of their First Amendment rights during the February meetings.

**D.    The North Avenue Sewer Improvement Project**

In 2003, the City began planning improvements to some of its older sewers by "decombining" sewer lines in a project known as the North Avenue Sewer Improvement Project ("the Project").[4]  DSOF ¶ 33.  The Project required sewer lines under parts of North Avenue to be "decombined" in order to solve a long time problem of raw sewage overflows into residences, commercial properties, and streets during periods of heavy rainfall.  DSOF ¶ 35.  Plans for the project were finalized in 2006.  DSOF ¶ 36.

In order to facilitate the Project, parts of North Avenue were shut down, including the area alongside the Hilltop Citgo.  DSOF ¶ 38.  Numerous construction and detour signs were set up in the area.  Def. Ex. 15 (Road Closure Map).  The extent to which Plaintiffs were burdened as a result of the Project is in dispute.  DSOF ¶¶ 44-49; PR ¶¶ 44-49.  Defendants contend that access to the Hilltop Citgo via North Avenue was closed for no more than 20 days, while access via Broadway remained open at all times.  DSOF ¶¶ 47-48.  Plaintiffs, however, claim that access via North Avenue was significantly restricted, and completely closed off for a much longer period, from May 2007 to November 2007.  PR ¶¶ 44, 47.  In addition, Plaintiffs claim that access to the Hilltop Citgo via Broadway Avenue was also cut off for some 75 days during this period.  PR ¶¶ 47-48.  While the Project was being carried

_____

[4] At the time the Project was commenced, approximately 25% of the City of Aurora's sewer system was built to handle both raw sewage and stormwater in a single sewer pipe.  Def. Ex. 9, ¶ 8.  The problem with handling raw sewage and stormwater in a single pipe is that when the sewer system overflows due to stormwater overload, raw sewage backs up and overflows into homes and streets.  Id., ¶ 9.  "Decombining" is the process by which this type of single sewer line is split into two lines: one for raw sewage and another for stormwater.  Id., ¶ 12.

out, a Minute Man gas station, located at the southeast corner of the intersection of North Avenue and Broadway, suffered similar access restrictions due to construction. DSOF ¶ 49; Def. Ex. 15.

On July 24, 2007, Mr. Rana approached a City employee, Alberto Sanchez ("Sanchez"), and requested something be done about access to the Hilltop Citgo via North Avenue. DSOF ¶ 50. Mr. Sanchez directed the contractors working onsite to install a gravel driveway, which was built the same day at the City's expense, to restore the Hilltop Citgo's ingress and egress access via North Avenue. DSOF ¶ 51.

None of the City employees who oversaw the design or implementation of the Project's road closure plan had knowledge of the filing of the lawsuit or of Mr. Daniel's comments during the time the road closures were designed or implemented. DSOF ¶ 41; PR ¶ 41 ("Agreed"). None of these employees were directed to extend the duration of the road closures or suggested that the closures be extended. DSOF ¶ 42; PR ¶ 42 ("Agreed").[5] None of the named Defendants took any action to delay the Project or retaliate against Plaintiffs. DSOF ¶ 43; PR ¶ 43 ("Agreed").

---

[5] Defendants improperly labeled two distinct paragraphs in their Statement of Material Facts as "42." DSOF ¶ 42. Plaintiffs did not acknowledge this error, and simply "agreed" to paragraph 42 without clarifying which paragraph was being agreed to. Because Plaintiffs agreed to paragraphs 32-43, and failed to contest either paragraph at oral arguments when the matter was raised by the Court, the Court will consider both paragraphs admitted for the purposes of this motion.

## III. LEGAL STANDARD

A court may grant summary judgment when the "pleadings, the discovery, and discovery materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. 242, 255 (1986). The movant bears the burden of establishing that there exists no genuine issue of material fact. *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986); *Hedburg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). The party bearing the burden of proof on any issue at trial may not rest on the pleadings, but must "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

The evidence is viewed in the light most favorable to the non-movant and "all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Summary judgment is inappropriate when alternate inferences can be drawn from the evidence, as the choice between reasonable inferences from facts is a jury function. *Id.*; *Spiegla v. Hall*, 371 F.3d 928, 935 (7th Cir. 2004). In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). Because Plaintiffs do not challenge the facial validity of any enactment or policy of the City, only the actions of the Defendants will be examined for the purposes of this motion.

## IV. DISCUSSION

**A.  Summary Judgment for Defendants is Appropriate on Count I Because Plaintiffs' First Amendment Rights Were Not Violated During the February 2007 Meetings.**

The First Amendment's protection of freedom of expression against government intrusion is applicable to Defendants by way of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969) (applying First Amendment rights to states by way of the Due Process Clause of the Fourteenth Amendment). The First Amendment does not, however, grant the right to communicate one's views "at all times or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981). Rather, it is permissible that some expression be subject to "reasonable time, place and manner restrictions." *Id.*  The *Heffron* Court explained that such restrictions have been upheld "provided that they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in doing so they leave open ample alternative channels for communication of information." *Id.* at 647-48; *see also Horina v. City of Granite City*, 538 F.3d 624, 631 (7th Cir. 2008)*; Weinberg v. City of Chicago*, 310 F.3d 1029, 1040-41 (7th Cir. 2002).

In order to delineate the government's ability to limit public expression, three categories of government property have been established–the traditional public forum, the designated public forum, and the non-public forum. *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677-78 (1998); *Cornelius v. NAACP Legal Def. & Educ. Fund,* 473 U.S. 788, 802 (1985); *Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37, 45 (1983); *Vergara v. City of Waukegan*, 590 F. Supp. 2d 1024, 1036 (N.D. Ill. 2008).  A

traditional public forum is property that has long been devoted to assembly and debate, such as a street or a park. *Perry*, 460 U.S. at 45. A designated public forum is property that the government has purposefully provided to the public for expressive activity. *Id.* A non-public forum is property that is not "by tradition or designation a forum for public communication." *Id.* at 46.

In traditional and designated public forums, the government's ability to restrict speech is limited. *Id.* at 45-46. Any content-based restrictions, promulgated with reference to the content of the speech being restricted, are subject to strict-scrutiny, and must serve a compelling state interest and be narrowly drawn to achieve that purpose. *Id.* The government may also impose "[r]easonable time, place and manner regulations that are content-neutral" which serve a significant government interest and leave open "ample alternative channels of communication." *Id.* For a non-public forum, the standard is lower, requiring that restrictions merely be reasonable, and not adopted because public officials oppose the speaker's view. *Id.* at 46.

## 1. Defendants' Regulation of Plaintiffs' Speech at the February 15 Meeting Was Proper.

The City of Aurora's February 15, 2007 joint committee meeting was a designated public forum at which the City could enforce reasonable time, place, and manner restrictions on public participation. Municipal council meetings that allow public participation are designated public fora. *Madison School Dist. v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 175 (1976); *Vergara*, 590 F. Supp. 2d at 1037 (the "audience time" portion of

17

city council meetings are designated public fora).

It is uncontested that Aldermen Saville and O'Connor set forth the rules for public participation without reference to the content of the messages. As outlined in the City of Aurora Municipal Code, both time and relevance restrictions apply to comments made during City Council meetings. In addition to speaking at City Council meetings, members of the public are invited to communicate any concerns to council members in writing. Thus, because time and relevance restrictions in place during the February 15 meeting were justified without reference to content, and alternative channels of communication were available, such restrictions are appropriate as long as they serve a significant government interest. *Perry*, 460 U.S. at 45.

### a.    The Time Limit Placed On Mr. Daniel Was Reasonable and Served a Significant Government Interest.

A time limit for public participation at a council meeting is a reasonable time, place, and manner restriction that is narrowly tailored and serves a significant interest. *See Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (finding a three-minute rule at a city council meeting did not violate First Amendment); *Wright v. Anthony*, 733 F.2d 575, 577 (8th Cir. 1984) (upholding a five-minute time limit for public comments). Time limits serve "a significant governmental interest in conserving time and in ensuring that others ha[ve] an opportunity to speak." *Wright,* 733 F.2d at 577. In *Wright*, a dispute arose when a Congressman held a public hearing on the issue of Social Security reform, at which plaintiff attempted to speak. *Id*. at 575. The Congressman enforced a five-minute time limit and

prevented plaintiff from completing his oral comments. *Id*. at 576-77. The Court upheld the restriction, noting that the restriction was imposed without reference to the content of plaintiff's speech, and that his written comments could be submitted in their entirety. *Id*.

Plaintiffs argue that, due to the complexity of the issue being discussed, even a five-minute time limit "would not have sufficed" and that "three minutes was utterly unreasonable." Pl. Resp. p. 4. Plaintiffs also contend that the time limit was applied in a content-based way because parties to the contract and other persons invited to speak by the joint committees were not subject to the time limit. This argument is undermined by Plaintiffs' own admission that Aldermen O'Connor and Saville "set forth the rules for public participation without reference to the content of the messages." PR ¶ 17 ("Agreed"). It is uncontested that Mr. Daniel spoke for longer than the allotted three minutes before being stopped for violating the rules governing public comment. PR ¶¶ 19-22.

The purpose of the February 15 meeting was to discuss the proposed agreement in order to clarify issues before presenting it before the City Council. Defendants have discretion to run their meeting in a way that allows them to operate effectively and efficiently. The City enforced a time limit that was reasonable and served a significant government interest in "conserving time and ensuring that others would ha[ve] an opportunity to speak." *Wright*, 733 F.2d at 577. Further, as in *Wright*, Plaintiffs were not barred from submitting comments in writing, and were in fact encouraged to do so after the meeting. *See* Def. Ex. 6. Thus, the time limit imposed during the February 15 meeting did not violate the First Amendment.

**b.    The Relevancy Rule Imposed On Mr. Daniel Was Reasonable and Served a Significant Government Interest.**

In addition to enforcing time limits for speakers, a municipal council may designate a place or forum "for the discussion of *certain subjects*." *Cornelius*, 473 U.S. at 802 (emphasis added). A council does not violate the First Amendment when it limits public participants to speaking only about subjects on the agenda. *Id.*; *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990); *Vergara*, 590 F. Supp. 2d at 1037-38 (citing *White*). Because a City Council has a significant government interest in effectively conducting business, the typical First Amendment "antipathy to content-oriented control of speech cannot be imported into the Council chambers intact." *White*, 900 F.2d at 1425. "While a speaker may not be stopped from speaking because the moderator disagrees with the speaker's viewpoint," *see Perry*, 460 U.S. at 60-61 (Brennan, J., dissenting), the chairman of a council meeting may "certainly stop [the speaker] if his speech becomes irrelevant or repetitious" or disruptive. *White*, 900 F.2d at 1425-26.

Plaintiffs argue that Alderman O'Connor erred in finding Mr. Daniel's comments to be irrelevant, based on certain environmental provisions within the proposed agreement which may have affected Plaintiffs. Plaintiffs admit, however, that they were not a party to the agreement being discussed. *See* Pl. Resp. p. 6. Further, Mr. Daniel's comments were related to prior litigation and other complaints against the City on behalf of the Plaintiffs. *See* Def. Ex. 5, pp. 57-61. Because the agenda was limited to discussion of the proposed redevelopment agreement, it was reasonable for Aldermen O'Connor and Saville to restrict

Mr. Daniel's discussion of irrelevant topics, allowing the City to effectively conduct its business and Plaintiffs to pursue their claims through more appropriate channels.

**2. Defendants' Regulation of Plaintiffs' Speech During the February 20 Meeting Was Proper Because the Committee of the Whole Meeting Was a Non-Public Forum.**

Plaintiffs contend that the February 20 Meeting of the Committee of the Whole was a public forum, and the refusal by the Mayor to recognize Mr. Daniel at that meeting constitutes a First Amendment violation. Plaintiffs acknowledge that a Committee of the Whole Meeting is designated as a non-public forum. They argue that notwithstanding the rules set forth in the ordinances, resolutions or policies of the City of Aurora, the meeting constituted a public forum when the City allowed other members of the public, invited by the City, to speak on issues regarding the proposed redevelopment agreement. Plaintiffs provide no legal or factual support for their assertion. The Committee of the Whole meeting of February 20 was a non-public forum. Def. Ex. 7, ¶¶ 9-22; Def. Ex. 4, § 2-122.

The purpose of the February 20 meeting was to allow City Council members to discuss matters among themselves, parties to the proposed agreement, and those with relevant expertise who were invited to speak. DSOF ¶ 28; PR ¶ 28. When Mr. Daniel spoke, he did so without permission and without being recognized by the Mayor, facts which Plaintiffs do not dispute. PR ¶¶ 30-31 ("Agreed"). Because the City did not intend to allow for public participation at the meeting, and because the only parties allowed to speak, other than Council members, were invited by the City Council, the February 20 meeting was a non-public forum. *See Ark. Educ. Television Comm'n,* 523 U.S. at 679 (explaining that the

government does not create a designated public forum when it does no more than allow access for a particular class of speakers, who must obtain permission to use it).

In sum, the restrictions placed on Plaintiffs during the February meetings were reasonable time, place and manner restrictions, serving a significant government interest and allowing for ample alternative channels of communication. Such restrictions do not violate the First Amendment. Therefore, Defendants are entitled to summary judgment on Count I of the Amended Complaint.

**B.   Summary Judgment For Defendants Is Appropriate On Count II Because Plaintiffs Admit That Defendants Did Not Retaliate Against Them, and Because Plaintiffs Failed to Establish a *Prima Facie* Case For Retaliation.**

### 1.   Plaintiffs Admit That Defendants Did Not Retaliate Against Them.

This Court was surprised to see, as Defendants likely were, that Plaintiffs admit that no retaliation took place. PR ¶¶ 33-43 ("Agreed"). Plaintiffs attempt to create issues of material fact in their Response brief regarding the extent of the road closures and what the City's employees and agents knew. Plaintiffs' assertions in their Response brief, however, are contrary to admissions in their Local Rule 56.1 Response wherein they "Agreed" that the City planned this project as far back as 2003; that the road closures were necessary because the sewers were underneath the road; that the City employees responsible for the work did not know about Mr. Daniel's comments; that no City employee was directed to extend the duration of the road closures or suggested that the closure be extended; and that none of the Defendants took any action to delay the work or retaliate against Plaintiffs. PR ¶¶ 33-43 ("Agreed"). Significantly, as Plaintiffs admit, none of the Defendants took any action to

delay the Project or retaliate against Plaintiffs. PR ¶ 43. Therefore, summary judgment on Count II is appropriate for Defendants because by their own admission Plaintiffs cannot make out their *prima facie* case.

### 2. Plaintiffs Failed to Establish a *Prima Facie* Case For Retaliation.

In order to overcome Defendants' motion for summary judgment on Count II, Plaintiffs must establish as their *prima facie* case for retaliation that (1) they engaged in activity protected by the First Amendment; (2) they suffered a deprivation that would likely deter such activity in the future; and (3) the Defendants' depriving actions were motivated by Plaintiffs' protected activity. *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006); *Vukadinovich v. Board of School Trustees of North Newton School Corp.*, 278 F.3d 693, 699 (7th Cir. 2002). Defendants do not contest that Plaintiffs engaged in protected First Amendment activity. For the purposes of this motion for summary judgment, this Court will accept Plaintiffs' contention that the loss of access suffered during the North Avenue Sewer Improvement Project was substantial enough to deter Plaintiffs from engaging in future litigation with the City. Thus, only the third element, that the Defendants' depriving actions were motivated by Plaintiffs' protected activity, need be established by the Plaintiffs in order to survive the motion.

Plaintiffs must prove that their protected activity was a motivating factor in the Defendants' actions. *Spiegla v. Hall*, 371 F.3d 928, 941-43 (7th Cir. 2004). A motivating factor is one that "caused, or at least played a substantial part in" the government's allegedly retaliatory acts. *Klunk v. County of St. Joseph*, 170 F.3d 772, 775 (7th Cir. 1999). Plaintiffs

failed to establish this final element by their own admission. None of the City employees responsible for designing or implementing the Project which caused Plaintiffs' deprivation had knowledge of this lawsuit or of Mr. Daniel's comments at the February meetings. PR ¶¶ 39-41 ("Agreed"). Plaintiffs admit the Project was planned in 2003, and finalized in 2006, before any of the occurrences involved with this litigation took place. PR ¶¶ 33-38 ("Agreed").

Unable to show a causal connection between their protected activity and the deprivation caused by the Defendants, Plaintiffs cite generally to *Vergara* and argue that retaliatory motive can be established, sufficient to withstand summary judgment, through Defendants' "knowledge of protected [activity], coupled with close temporal proximity between the speech and the allegedly retaliatory action." *Vergara*, 590 F. Supp. 2d at 1048. Again, Plaintiffs' argument is undermined by their own admission that the City officials who designed and implemented the Project had no knowledge of Plaintiff's protected activity, and

that no temporal proximity exists because plans for the Project were developed *before* the protected activity took place.  PR ¶¶ 33-41.

Finally, Plaintiffs attempt to create an issue of material fact by offering inadmissable hearsay evidence that a City employee, Sanchez, disclosed to Mr. Rana's employee that the City had an "axe to grind" against the Plaintiffs.[6]  Pl. Resp. p. 8; Pl. Ex. C, ¶ 7.  As discussed in *Kasak*, "a hearsay statement made during a deposition does not constitute adequate evidentiary support for a factual proposition."  563 F. Supp. 2d at 867.  Therefore, Plaintiffs' hearsay evidence would not be admissible and is not considered for the purpose of this summary judgment motion.  *Kasak*, 563 F. Supp. 2d at 867.  This assertion is not supported anywhere else in the record, and is in direct conflict with the affidavit of Sanchez, who allegedly made the statement.  Def. Ex. 11, ¶¶ 37-41.

By their own admission, Plaintiffs concede that the Defendants took no action to delay the Project or retaliate against the Plaintiffs.  Thus, summary judgment is appropriate on Count II of the Amended Complaint.

---

[6] According to the affidavit of Plaintiff Rana, Sanchez conversed several times with Mr. Rana's employee, in Spanish, during the Project.  Pl. Ex. C ¶ 7.  Although Mr. Rana apparently does not speak Spanish, Sanchez' comments were translated and relayed to him by his employee, who is not identified by Plaintiffs and has not provided an affidavit in support of Plaintiffs' contentions.  *Id*.; *see* Pl. Ex. A-D.

## V. CONCLUSION

For the reasons set forth in this opinion, Defendants' motion to strike and deem admitted is granted in part and denied in part, and Defendants' motion for summary judgment on Counts I and II of the Plaintiffs' Amended Complaint is hereby granted.

SO ORDERED THIS 24th DAY of June, 2009

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Mark W. Daniel
Rathje and Woodward, LLC
300 East Roosevelt Road
Suite 300
Wheaton, IL 60187

Lance C. Malina
Allen Wall
Gregory T. Smith
Klein, Thorpe and Jenkins, LTD.
20 N. Wacker Drive, Suite 1660
Chicago, IL 60606

Counsel for Plaintiffs

Counsel for Defendants